Filed 4/16/25  In re K.K. CA4/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.K., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.K., <br><br> Defendant and Appellant. | G065029 <br><br> (Super. Ct. No. 24DP1273) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Joseph Kang, Judge. Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*     \*     \*

E.K. (the mother) appeals the juvenile court's dispositional order as to her daughter, K.K., in this dependency matter. The mother's sole argument is that the court improperly concluded that the Indian Child Welfare Act (ICWA) does not apply to this case. The mother, who was adopted, contends sufficient efforts were not made to inquire of her biological family members as required by the California version of ICWA (Cal-ICWA). We conclude the efforts made by the Orange County Social Services Agency (SSA) were adequate. Accordingly, the court's dispositional order is affirmed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Because of the limited nature of this appeal, we focus on the facts relevant to the ICWA inquiry. Prior to detention, the mother had a lengthy child welfare history, with numerous reports. The incident that led to detention occurred when the mother arrived at the child's school two hours late to pick her up. The child was six years old at the time. The reporting party stated that the mother appeared to be under the influence, and the police detained the child on an emergency basis. K.K.'s father was deceased. SSA filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b).[1]

With regard to ICWA, a few days before the detention hearing, on October 12 and 14, the maternal grandmother, maternal grandfather, and the mother denied Native American ancestry. The mother, who was adopted by the maternal grandparents, reported no knowledge of Native American heritage through her biological family.

---

[1] Subsequent statutory references are to the Welfare and Institutions Code unless otherwise indicated.

On October 16, 2024, the mother completed the ICWA-020 form, checking the box that said, "None of the above apply," which indicated no known Native American heritage. At the detention hearing on the same date, the mother said she was "not too sure" about Native American heritage and noted that she was adopted. The court ordered the mother to provide SSA with the names and contact information of any relatives or interested parties who might know of possible Native American heritage.

On October 18, the mother told SSA her adoption was open, which allowed the mother to have contact with her biological maternal family. She reported her birth mother (the biological maternal grandmother) and a sister (the biological aunt) lived in Oregon. The mother told SSA she would provide contact numbers for them. She had no contact with her biological father or his family and had no contact information for them. The maternal grandparents had no contact information for the mother's biological paternal family either.

The contact information for her birth family was not forthcoming from the mother. SSA asked again on October 25 and October 30. On both occasions, the mother said she would provide the information at a later time.

On November 4, the maternal grandmother stated she was in contact with the biological maternal grandmother on social media and would ask for contact information. She reported the mother had a contact number for the biological grandmother. On that same date, the social worker reported attempting to reach the biological maternal grandmother at a specified phone number. The call could not be completed at that number. On November 14, the social worker tried again, but the call did not go through.

At the combined jurisdiction/disposition hearing in December, the court found that "ICWA does not apply at this time. However, [SSA] has an affirmative and continuing duty of inquiry."

The mother now appeals.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

We review the juvenile court's findings regarding ICWA under the substantial evidence standard. "[W]here the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

### II.

#### RELEVANT LEGAL PRINCIPLES

"In 1978, Congress enacted the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) to 'formalize[] federal policy relating to the placement of Indian children outside the family home.' [Citation.] Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; . . .), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases. (Welf. & Inst. Code, § 224.2, subd. (a).) Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124–1125, fn. omitted (*Dezi C.*).) Among other things, ICWA provides for notice of dependency proceedings to a Native American child's

4

tribe and gives the tribe the right to intervene in the case. (25 U.S.C. § 1912, subd. (a); Welf. & Inst. Code, § 224.1.)

"In 2016, new federal regulations were adopted addressing ICWA compliance. [Citation.] The regulations are binding on state courts, are intended to 'improve ICWA implementation,' and clearly identify what actions state courts and agencies must undertake to ensure ICWA implementation in child welfare proceedings." (*Dezi C., supra,* 16 Cal.5th at p. 1130.) As a result of the new federal regulations, "California made conforming amendments to Cal-ICWA, including portions of the Welfare and Institutions Code related to ICWA inquiry and notice requirements." (*Id.* at p. 1131.) These amendments "'revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.' [Citation.] As a result of this amendment, "'agencies now have a broader duty of inquiry and a duty of documentation.'"" (*Ibid.*)

"Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child. Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.'" (*Dezi C., supra,* 16 Cal.5th at pp. 1131-1132, fn. omitted.) "Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in

5

the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Id.* at p. 1132.) "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required." (*Ibid.*)

III.

SSA AND THE COURT FULFILLED THEIR OBLIGATIONS UNDER ICWA

SSA asked the mother on several occasions about Native American ancestry through her birth family. She answered no each time, including on the ICWA-020 form. After she informed the court she was "not too sure" about her heritage at the detention hearing, the court ordered her to provide SSA with any relevant information. The mother did immediately not do so, despite being asked twice. SSA also asked the maternal grandparents for any information. SSA obtained a phone number purported to belong to the biological maternal grandmother and attempted to call it on two separate occasions. Both attempts resulted in a message that the call could not be completed.

The court inquired about ICWA and made appropriate orders.

CAL-ICWA "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C., supra,* 16 Cal.5th at p. 1140.)

We conclude that SSA conducted a sufficient inquiry in this case, and the court appropriately inquired and made orders. SSA acted on the information it had available to it, asking the mother and maternal grandparents for information. It followed up on the information it had. The

6

mother states SSA "did not include any effort to contact mother's biological maternal family members." This is inaccurate, as evidenced by the social worker's attempts to reach the biological maternal grandmother at the phone number provided.

The mother also contends that "from the record it is reasonable to assume that the Agency could have asked mother for contact information for the biological maternal grandmother and aunt to inquire about ICWA." The record reflects that the mother was asked for such information at least twice by the social worker and was ordered by the court to provide such information to SSA. The mother cites *In re Samantha F.* (2024) 99 Cal.App.5th 1062, 1066, reversed on other grounds in *Dezi C., supra,* 16 Cal.5th at page 1152, footnote 18, but in that case, the record did not state whether SSA asked other relatives about Native American heritage. The record does not reflect that was the situation here. SSA asked the maternal grandparents and unsuccessfully tried to reach the only biological family member for which contact information was available.

The mother claims contact information for her biological family was "easily obtainable" through her, yet the record, again, reflects she was asked twice and did not provide any actionable information. She implies that providing the names of her biological family members was somehow sufficient, but the names of both the biological maternal grandmother and biological aunt are relatively common, and we cannot assume they would have been easy to locate in the absence of specific contact information, such as a valid physical or e-mail address or a phone number. Simply asking "a few more questions," as the mother suggests, was not at all likely to be productive, since the social worker had asked the mother for this information at least twice, only to be put off each time.

In sum, we find SSA acted reasonably based on the information it had at the time, and the court made appropriate inquiries regarding ICWA's applicability. Accordingly, there was no error in the court's conclusion that "ICWA does not apply at this time." Of course, as the court also noted, the duty to inquire is continuing, and if the mother (or anyone else) can provide accurate contact information for her biological relatives to SSA, it must then take steps to comply with ICWA.

## DISPOSITION

The court's disposition order is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


SCOTT, J.